CONRAD SCHUTT

v.

THE MISSIONARY SOCIETY OF THE METHODIST EPISCOPAL
CHURCH et al.

One G. wrote, in 1869, to his nephew, who was then living in Germany, that if he would come to this country and take care of him and his wife, who were childless, that he would leave him all his fortune; and that otherwise he need expect nothing from him. The nephew came accordingly, and took care of his uncle and aunt for ten years, until the uncle's death.—*Held*, that this constituted a contract enforceable by the nephew against the legatees and representatives of the uncle, claiming under a will of the uncle which made no provision whatever for the nephew.

———

Bill for relief. On general demurrer.

*Messrs. Riker & Riker*, for complainant.

*Messrs. Coult & Howell*, for demurrants.

THE CHANCELLOR.

The bill is filed to enforce performance of a written contract made by Godfrey Schutt, now deceased, the uncle of the complainant, with the latter. Godfrey Schutt died in 1879, leaving a will, by which, after directing that all his debts and funeral expenses be paid, he gave all his estate to his wife for life, with full power and unlimited authority to use and dispose of whatever part of it she might desire for her own use, during her life. He then gave to Laura Gilbert $100, and gave all the residue of his estate, after his wife's death, to the Missionary Society of the Methodist Episcopal Church, incorporated by the legislature of the state of New York, to be appropriated to the cause of foreign missions. His widow is dead, and the legacy to Laura Gilbert has been paid. His estate consisted of a house and lot in Irvington, in Essex county, and personal property of the

value of about $12,500. This suit is brought against the society and the administrator *cum testamento annexo de bonis non* to recover what remains of the estate. The complainant's claim is based upon the following facts : In the beginning of 1869, when the complainant was but thirty-three years old, he was living in Wolgast, in Germany, working at his trade of ship carpenter. He had a house and lot there, and some personal property, and was in comfortable circumstances and contented. He was living with his family, among his friends, at home, in his native country, and he did not wish to change his abode or manner of life. He then received a letter from his uncle, Godfrey Schutt, who then lived in Irvington, containing, according to the averments of the bill, an express promise, agreement and contract on the part of the latter that if the complainant would come to him, in this country, and live with him, he should be to him as an only child and heir, and should finally become possessed of his estate, both real and personal. In the summer of 1869, he came to this country with his family, arriving in July. From that time until his uncle's death, a period of over ten years, he gave to his uncle his personal attention and care like a son. Part of the time he lived in the same house with him in Newark, and part of the time he lived with him in his house at Irvington, and the rest of the time he lived in a house which he built at his uncle's request, with his own money, on a lot worth about $350, given to him by his uncle, adjoining his uncle's house. He supported himself and his family all the time, and paid rent to his uncle for the part of the house which he occupied while he lived in Newark. He never received anything, except the above-mentioned lot, for his services. In the fall of 1869, his uncle made a will by which he gave to him the greater part of his property, but afterwards, through the importunity of his wife, destroyed it, and subsequently made the one which was in force at his death, by which he gave the complainant nothing.

That such a contract as is set forth in the bill can be enforced was held in this court in *Van Dyne* v. *Vreeland, 3 Stock. 370 ; S. C., 1 Beas. 142 ;* see, also, *Hill* v. *Gomme, 1 Beav. 540.* But it is urged, on the part of the demurrants, that the letter (which

is set out, without translation, in the bill, in the German language, in which it was written) does not warrant the statement made in the bill as to its import.    The letter, as I read it, is as follows :

" DEAR NEPHEW—For a long time I have expected a letter from you, but have expected in vain.  I have, nevertheless, kept on hoping that you would come to us and with your family earn your living here with us.  I do not know how much or how little you now earn, but I am sure of this, however, that you can earn ten times as much here as you can earn in Germany.  My brother John once wrote me that I must not forget my heir (meaning you, perhaps), but I will send no money to Wolgast.  If you want to be my heir you must come to me, and that very soon, for I and my wife are both old, and I especially am very feeble.  But if you do not come—do not want to come—you cannot be my heir, and in that case my estate will fall into other hands.  If you conclude to come and it does not please you here, I will pay your expenses coming and returning.  Be so good as to give me your answer as soon as possible, or, better still, come yourself, with your family.  When you arrive in New York write to me at once from the vessel, and if health permit, I will meet you."

The purpose of the writer of the letter was to offer to the complainant, as a consideration for leaving his own country and removing to this, to take care of him and his wife, who were childless and both old, the gift of his entire estate after their death.  It is argued, on the part of the demurrants, that the expressions which are relied upon as evidence of the contract are not such as to constitute a promise or an offer, but signify merely that if the complainant expected to get anything from the writer at the death of the latter he must come to this country, and it is also argued that those expressions left the writer perfectly free, in case his proposition should be accepted, to dispose of his property by will, as he might see fit, and created no obligation upon him to give it to the complainant in case the latter should, on the strength of the proposal, come to this country as requested ; in other words, that all those expressions signified was that the complainant need expect nothing from the writer's bounty unless he should come to this country.  But the language forbids so narrow a construction.  The complainant was the only child of Godfrey Schutt's deceased brother John.  God-

Schutt v. Missionary Society.

frey had no other brother or sister of the whole blood.  He had
a brother of the half blood.  Godfrey never had any children.
In the letter to the complainant he mentions the fact that his
brother John, the complainant's father, had requested him, in a
letter, not to forget his "heir," by which term he understood his
brother to refer to the complainant.  He says, in that connec-
tion, that he does not intend to send any money (geld) to Wol-
gast, and adds:

"Wenn du mein erbe sein wilst, denn must du zu mir kommen, und das sehr
bald; denn Ich und meine frau sind beide alt, und Ich überhaupt bin sehr
schwächlich.  Wenn du aber nicht kommst, kommen wilst, so kannst du
mein erbe nicht sein; so fält mein vermögen in andere hände."

That is, "If you want to be my heir you must come to me,
and come very soon, for I and my wife are both old, and I es-
pecially am very feeble.  But if you do not come—do not want
to come—in that case my estate [vermögen—property, fortune or
estate] will fall into other hands."  The inheritance of the uncle's
estate is promised as the nephew's reward for compliance with
the uncle's request, and the compliance is distinctly presented as
the condition on which the nephew should be entitled to the in-
heritance.  The proposition emanated entirely from the uncle
himself, and he knew that the nephew would be reluctant to ac-
cept it.  He begins his letter by complaining that his nephew
has not written to him.  He says that for a long time he has
expected a letter from him, but in vain, and that he has kept on
hoping that the complainant would come to him and his wife,
(nach uns) and would live here with his, the complainant's, family
with or near them (bei uns).  He then mentions the fact that the
complainant's father once requested him not to forget the com-
plainant (speaking of him as the uncle's heir) in disposing of his
property, and assures the complainant that he will get none of his
property unless he comes to him (zu mir).  After declaring the
terms on which alone the complainant could become his heir, he
says that if the latter does not want to comply with them he will
give his property to others; that is, that compliance would se-
cure the estate, but noncompliance would be fatal to all expec-

tations. That he meant to hold out the gift of his entire property as the inducement is evident from the difference in the terms which he uses in declaring what would be the consequence of the complainant's staying in Wolgast, and in stating what the latter might expect in case he should come here. He declares that if the complainant stays in Wolgast he need expect nothing, no money (kein geld), while the incentive to coming here is the gift of his whole fortune (vermögen). He endeavors to overcome the nephew's reluctance by offering that if he will but come he will pay his expenses here and back, in case he should not be pleased with the change of residence. According to the bill, the complainant accepted and acted upon the offers made in the letter, and it is alleged in the bill that, owing to the constant care and attention required by his uncle, and to the fact that the complainant was obliged to live with or near him, the complainant was never able to give proper attention to his own business, and never earned good wages; his wages here averaging not over $1 a day, from which he could save nothing.

The demurrer will be overruled.